Alberta M. ROOKS, Appellant,

v.

**TRANS WORLD AIRLINES, INC., Respondent.**

No. WD 49269.

Missouri Court of Appeals, Western District.

Sept. 27, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 1994.

Application to Transfer Denied Dec. 20, 1994.

---

Steven J. Corel, Kansas City, for appellant.

Thomas V. Clinkenbeard, Kansas City, for respondent.

Before FENNER, C.J., and
LOWENSTEIN and SPINDEN, JJ.

FENNER, Chief Judge.

Appellant, Alberta M. Rooks, appeals the judgment of the Labor and Industrial Relations Commission (the Commission), which denied appellant's claim for death benefits for the death of her husband, Maurice Rooks. Maurice Rooks had been employed by respondent, Trans World Airlines, Inc. (TWA), since 1968. Maurice Rooks was first employed as a welder and then became a supervisor in 1976 or 1977.

On September 11, 1990, Maurice Rooks was notified that he was being furloughed by TWA.[1] Maurice Rooks' last day of work was on September 30, 1990. Thereafter, on October 25, 1990, Maurice Rooks committed suicide by shooting himself in the stomach. Appellant filed a claim for death benefits against TWA. The claim was denied after a hearing before an administrative law judge. Appellant appealed to the Commission and the Commission also denied the claim. The Commission made findings in the alternative. The Commission found first that Maurice Rooks was not an employee of TWA on October 25, 1990, and therefore, the claim was subject to denial. Alternatively, the Commission found that even if Mr. Rooks was otherwise entitled to coverage, the Commission was in agreement with the detailed findings of the administrative law judge and denied the claim on that basis as well.

On appeal herein, appellant argues first that the Commission erred in denying bene-

---

1. As best as can be determined from the record, when a TWA employee is furloughed, as opposed to being fired, the employee is entitled to certain benefits not otherwise available. These benefits include severance pay, insurance benefits, the ability to be recalled to work and the ability to use the flight benefits available through TWA. The record reflects that Maurice Rooks intended to use his severance pay to delay his official retirement date at which time his benefits would change.

fits on the basis that no employer/employee relationship existed on the date of Maurice Rooks' death, October 25, 1990. Appellant argues that even though the date of death was alleged to be October 25, 1990, the act of suicide was caused by TWA's treatment of Maurice Rooks, in placing him on furlough, which occurred prior to October 25, 1990, at a time when he was still employed by TWA.[2]

■ The fundamental purpose of the Workers' Compensation Law is to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment. *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781, 783 (Mo. banc 1983). Mental conditions are compensable under the Workers' Compensation Law. *Tibbs v. Rowe Furniture Corp.*, 691 S.W.2d 410, 412 (Mo.App.1985).

■ In the case at bar, the date of death was alleged and shown to be October 25, 1990, but the injuries were alleged to have been sustained by Maurice Rooks in the course of and arising out of his employment. The fact that no employer/employee relationship existed on October 25, 1990 is not controlling because the injuries were alleged to have arisen out of and in the course of Maurice Rooks' employment with TWA. The Commission erred by denying the claim on the basis that Maurice Rooks was not employed by TWA on the date of his death.[3] Nonetheless, this does not end our review because, as mentioned previously, the Commission adopted the findings of the administrative law judge as alternate findings.

**2.** Appellant complains that Maurice Rooks was notified of his furlough impersonally by phone, that he was not given proper recognition by TWA for his service, and that no party was held for him at work before he left. Appellant argues that this treatment caused Maurice to become depressed and take his life.

**3.** TWA argues that the October 25, 1990 date has significance as the date argued by appellant to be the date from which the 30–day notice requirement began pursuant to section 287.420, RSMo 1986. TWA argues that if October 25, 1990 is not used, and a date in September is used, then notice was not timely filed.

Section 287.420, RSMo 1986, requires that, for purposes of a workers' compensation claim, no-

■ In regard to the Commission's alternate findings, appellant argues in her second point that the Commission erred by adopting the findings of the administrative law judge rather than entering findings of its own pursuant to her request for specific findings on questions she presented. The issue presented here is whether the Commission is required to make specific findings on all factual issues specifically requested.

Sections 287.460 and 287.490, RSMo 1986, require an administrative law judge and the Commission on appeal to enter findings in support of the judgments entered. In *Dixon v. Art Bunker Motors, Inc.*, 387 S.W.2d 199, 204–05 (Mo.App.1964), the court addressed the requirement of findings and held that findings are required on the essential controverted ultimate facts in order to facilitate review. The court further held that even when a specific request for additional findings is made, the Commission is not obligated to make additional findings on "matters which were not the ultimate fact issues, nor a disputed controlling fact issue, nor essential to an understanding of the Commission's award or to a judicial review of it, [nor] upon matters [where] the record is insufficient to provide a basis for determination." *Id.* at 205.

Appellant does not show how her requested findings addressed ultimate fact issues. Furthermore, our review of appellant's requested findings reflects that the requested findings either were addressed in the findings entered, were not disputed controlling fact issues, or were otherwise not essential to an understanding of the Commission's award.

tice of injury must be given to an employer not later than thirty days after an accident, unless good cause for failure to give notice is found or the employer was not prejudiced by the failure to give notice. In the case at bar, the only finding in regard to notice is the Commission's reference to the finding of the administrative law judge that good cause was shown for failure to provide proper notice. In its alternative finding, the Commission adopted the findings of the administrative law judge. TWA has not shown the finding that good cause was shown for failure to provide proper notice to lack support in the record. Accordingly, TWA's argument in this regard is to no avail.

Appellant's second point is denied.

■ In her third point, appellant argues that the Commission erred by finding that Maurice Rooks' death was not compensable because the evidence was uncontradicted that at the time of his death Maurice Rooks was insane and, as a result of his insanity, he could not fully understand the consequences of his acts. Appellant argues further that Maurice Rooks' insanity arose out of and occurred in the course of his employment with TWA because his insanity was caused by his furlough from TWA and the manner in which he was treated in regard to his furlough.

■ In reviewing a workers' compensation case, the Court of Appeals considers the case in the light most favorable to the award of the Commission and upholds the decision of the Commission if it is supported by competent and substantial evidence on the whole record. *Redden v. Dan Redden Co.,* 859 S.W.2d 207, 209 (Mo.App.1993) (citation omitted). An appellate court cannot substitute its judgment for that of the Commission. *Id.* The reviewing court disregards any evidence that might support a finding different from that of the Commission, even though a finding of the Commission to the contrary would be supported by the evidence. *Id.*

As agreed between the parties, the dispositive issue under this point, and the essence of the dispute between the parties in this case, is whether Maurice Rooks' suicide can be properly characterized as a self-inflicted injury as defined by section 287.120.3, RSMo Supp.1993. Said statute provides as follows:

> No compensation shall be allowed under this chapter for the injury or death due to the employee's intentional self-inflicted injury, but the burden of proof of intentional self-inflicted injury shall be on the employer or the person contesting the claim for allowance.

In *Mershon v. Missouri Public Service Corporation,* 359 Mo. 257, 221 S.W.2d 165, 169 (1949), the Missouri Supreme Court held that if suicide is committed with sufficient mental power to know the purpose and effect of the act, even though dominated by a disordered mind, it is intentional suicide as refer-

enced under the language of section 287.120.3, RSMo Supp.1993.[4] In order to prove that the suicide was intentional, the record must reflect that Maurice Rooks knew the purpose and effect of pointing the shotgun at his stomach and pulling the trigger. *See Kolde by Kolde v. St. Louis County,* 809 S.W.2d 14, 16 (Mo.App.1991).

Considered in the light most favorable to the finding of the Commission, the record reflects that in the month before his death, Maurice Rooks was able to relate to others, care for his personal needs and conduct his business affairs. Maurice Rooks was not undergoing any psychiatric care and none had been recommended for him by his family doctor or family members who were in contact with Maurice Rooks in the last few weeks of his life.

The evidence further reflected that on the day of his suicide, Maurice Rooks knew the purpose and effect of his actions. Mr. Rooks left a suicide note. In his note, Mr. Rooks indicated an understanding that he was about to take his life. He expressed love for his wife and children, sorrow that he was sick and that things were a mess. Further, Mrs. Rooks confronted her husband as he was attempting to kill himself with the shotgun. Mrs. Rooks grabbed the gun. Maurice talked her into releasing her grip and then he shot himself.

The evidence was sufficient to show that Maurice knew the purpose and effect of pointing the shotgun at his stomach and pulling the trigger. Appellant's further argument under her third point and argument under her fourth point that the evidence showed that Maurice Rooks' death arose out of and in the course of his employment is of no avail because recovery is barred by the terms of section 287.120.3, RSMo Supp.1993. Maurice Rooks' death was due to his intentional self-inflicted injury.

Judgment affirmed.

All concur.

---

**4.** *Mershon* dealt with the language of section 3691, RSMo 1939, which was the same as the language of section 287.120.3, RSMo Supp.1993, at issue here.