Marcia KASL, Respondent,

v.

BRISTOL CARE, INC., and Travelers
Property Casualty Company,
Appellants,

and

State Treasurer, Defendant.

No. 80947.

Supreme Court of Missouri,
En Banc.

Feb. 9, 1999.

Mary O. Thompson, Randall W. Schroer,
Larson & Larson, P.C., Kansas City, for
appellants.

James D. Worthington, Aull, Sherman,
Worthington, Giorza & Maycock, L.L.C.,
Lexington, for respondent.

BENTON, Chief Justice.

Marcia L. Kasl managed and resided at a
residential care facility in Lincoln. On No-
vember 15, 1995, at about 9:30 p.m., she
arose from her chair to dispense medicine to
a resident. Unaware her left foot had "fallen
asleep," she fell and broke her ankle.

The Labor and Industrial Relations Commission affirmed a temporary award of benefits. The employer (Bristol Care, Inc.) and the insurer (Travelers Property Casualty Company) appeal, asserting the injury did not arise out of her employment. This Court granted transfer. *Mo. Const. art. V, sec. 10.* Affirmed.

## I.

In 1993, the General Assembly amended the workers' compensation law. *1993 Mo. Laws 763–816.* The legislature did not change the fundamental principle of workers' compensation: Employers are liable, irrespective of negligence, to furnish workers' compensation to employees for personal injuries from accidents "arising out of and in the course of" employment. Compare *sec. 287.120.1 RSMo 1986,* with *sec. 287.120.1 RSMo 1994.*[1]

The 1993 amendment does, however, change the definition of "accident":

2. The word "accident" as used in this chapter, shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen *identifiable* event *or series of events* happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. *An injury is compensable if it is clearly work related. An injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability. An injury is not compensable merely because work was a triggering or precipitating factor.*

*Sec. 287.020* codifying *1993 Mo. Laws 766* (emphasis denotes language new in 1993).

■ Adopting the test in *Wolfgeher v. Wagner Cartage Service, Inc.,* the 1993 amendment requires that, to be compensable, accidents must be "clearly work related."

646 S.W.2d 781, 785[4] (Mo. banc 1983). As this Court has explained, this means accidents must be "unique" to the work. *Abel v. Mike Russell's Standard Service,* 924 S.W.2d 502, 504 (Mo. banc 1996).[2]

The 1993 amendment further requires that work must be a "substantial" factor, not merely a "triggering or precipitating" factor in causing the resulting medical condition or disability. The 1993 amendment thus overrules the holding of *Wynn v. Navajo Freight Lines, Inc.:*

"Even though [employee] was in poor health, had a preexisting heart condition, did not take good care of himself, and might have succumbed to a fatal heart attack while off work, possibly caused by different sorts of stress, the right to compensation should exist if the actual *triggering* causes are found, on the basis of substantial evidence, to meet the 'job related' or 'work related' test of *Wolfgeher.*"

654 S.W.2d 87, 89–90 (Mo. banc 1983) (emphasis supplied). The 1993 amendment also rejects statements in earlier cases, such as *Bone v. Daniel Hamm Drayage Company:* "The heavy work [employee] did while he had his heart and lung conditions was a *precipitating* cause of his death." 449 S.W.2d 169, 172 (Mo.1970) (emphasis supplied); *see also Wilhite v. Hurd,* 411 S.W.2d 72, 79 (Mo.1967); *Hall v. Spot Martin, Inc.,* 304 S.W.2d 844, 852 (Mo.1957). Similar statements in the cases listed in the appendix should not be followed, for claims governed by the 1993 amendment.

■ Awards for injuries "triggered" or "precipitated" by work are nonetheless proper *if* the employee shows that the work is a "substantial factor" in the cause of the injury. In *Alexander v. D.L. Sitton Motor Lines,* this Court approved compensation for a fall off a four-and-one-half foot platform, precipitated by a dizzy spell. 851 S.W.2d 525, 528

1. All statutory citations are to RSMo 1994 unless otherwise indicated.

2. Section 287.020, as amended in 1993, uses the term "work" eight times, while never using the term "workplace." To the extent that the *Abel* opinion limits the term "work" to the concept "workplace," it should not be followed for claims governed by the 1993 amendment.

(Mo. banc 1993). This Court stated: "But even though the heart attack, itself, is not compensable, injuries sustained in a fall as a result of the heart attack would be compensable, assuming there is a causal connection between the fall" and the work. *Id.* at 529.

## II.

The 1993 amendment also changes the definition of "injury":

> 3. (1) In this chapter the term "injury" is hereby defined to be an injury which has arisen out of and in the course of employment. The injury must be incidental to and not independent of the relation of employer and employee. Ordinary, gradual deterioration or progressive degeneration of the body caused by aging shall not be compensable, except where the deterioration or degeneration follows as an incident of employment.
>
> (2) An injury shall be deemed to arise out of and in the course of the employment only if:
>
> (a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing the injury; and
>
> (b) It can be seen to have followed as a natural incident of the work; and
>
> (c) It can be fairly traced to the employment as a proximate cause; and
>
> (d) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

*Sec. 287.020* codifying *1993 Mo. Laws 766* (entire quotation new in 1993).

■ Subsection (2)(a) repeats the "substantial factor" requirement of section 287.020.2, discussed in Part I of this opinion. The parties in this case further dispute the meaning of subsection (2)(d), which states that to be compensable, the injury cannot come from a hazard or risk "unrelated to"

employment. *Sec. 287.020.3(2)(d)* codifying *1993 Mo. Laws 766.* Among such hazards or risks are "idiopathic" conditions, those "peculiar to the individual: innate." *Alexander,* 851 S.W.2d at 527 n. 3. Common conditions exacerbated by employment requirements are not idiopathic. *Kloppenburg v. Queen Size Shoes, Inc.,* 704 S.W.2d 234, 236 (Mo. banc 1986). *See also Abel,* 924 S.W.2d at 504[4]; *Alexander,* 851 S.W.2d at 528; *Morgan v. Duncan,* 361 Mo. 683, 236 S.W.2d 281, 283[4] (Mo.1951). Yet, injuries on the job, resulting from an idiopathic condition peculiar to the employee, are not covered. *Abel,* 924 S.W.2d at 504.

## III.

Here, after waiting for the appointed time, Kasl arose from her chair to dispense medicine to a resident, a requirement of her job.

In terms of subsection 2(d), Kasl's condition was not idiopathic; having a foot "fall asleep" is neither innate nor peculiar to Kasl. Kasl's foot falling asleep was a common condition clearly related to her work. Without having to wait for the appointed time to dispense medicine, her foot would not have fallen asleep. And without having to arise to dispense medicine (a job requirement), with a foot that had fallen asleep, Kasl would not have fallen, breaking her ankle. By itself, having a foot fall asleep was neither a hazard nor a risk to Kasl. Only in conjunction with and exacerbated by her work did Kasl's common condition subject her to injury.

■ In terms of subsection 2(a), the work-related requirements were a substantial factor—more than a mere triggering or precipitating factor—in the fall that caused her injury. Here, the commission found: "the conditions of Mrs. Kasl's required work—waiting for the appointed time for Heimsoth's medication—caused her foot to fall asleep, which, when coupled with the job requirement of getting the medication, caused an accident." Kasl's work was thus a substantial factor in causing her fall and resulting injury, which was thus clearly work related.[3]

---

**3.** The dissent claims that this result is contrary to the *Abel* opinion. In fact, the *Abel* opinion did

not analyze or apply the 1993 amendment, because the accident there occurred in 1991.

The decision of the Labor and Industrial Relations Commission is affirmed.

PRICE, WHITE, HOLSTEIN, and WOLFF, JJ.,concur;

LIMBAUGH, J., dissents in separate opinion filed.

COVINGTON, J., concurs in opinion of LIMBAUGH, J.

## APPENDIX

*Carter v. Jones Truck Lines, Inc.,* 943 S.W.2d 821, 829 (Mo.App.1997); *McCowan v. City of Riverside,* 890 S.W.2d 725, 727 (Mo.App.1995); *Quilty v. Frank's Food Mart,* 890 S.W.2d 360, 363[10] (Mo.App.1994); *Kintz v. Schnucks Markets, Inc.,* 889 S.W.2d 121, 123[6] (Mo.App.1994); *Rector v. City of Springfield,* 820 S.W.2d 639, 642[7] (Mo.App.1991); *Kolde v. St. Louis County,* 809 S.W.2d 14, 15[1] (Mo.App.1991); *Haynes v. Emerson Electric Co.,* 799 S.W.2d 939, 948[3]–[4] (Mo.App.1990); *Jackson v. H.D. Lee. Co., Inc.,* 772 S.W.2d 742, 746–47[3] (Mo.App.1989); *Low v. ACF Industries,* 772 S.W.2d 904, 907[5] (Mo.App.1989); *Foley v. Pipefitters Union Local 562,* 762 S.W.2d 870, 871 (Mo.App.1989); *Arens v. Delcon Corporation,* 760 S.W.2d 914, 916 (Mo.App.1988); *Ham v. Sikeston Concrete Products,* 735 S.W.2d 427, 428–29 (Mo.App.1987); *Hutchinson v. Tri-State Motor Transit Co.,* 721 S.W.2d 158, 162–63 (Mo.App.1986); *Raines v. City of St. Louis,* 711 S.W.2d 544, 544 (Mo.App.1986); *Ford Motor Co. v. Dickens,* 700 S.W.2d 484, 486–87 (Mo.App.1985); *Tibbs v. Rowe Furniture Corp.,* 691 S.W.2d 410, 412 (Mo.App.1985); *Staab v. Laclede Gas Co.,* 691 S.W.2d 343, 344–45[1] (Mo.App.1985); *Matthews v. Roadway Express, Inc.,* 660 S.W.2d 768, 771 (Mo.App.1983); *Gunnerson v. Kansas City Structural Steel Co.,* 535 S.W.2d 585, 591–92[6] (Mo.App.1976); *Todd v. Goostree,* 493 S.W.2d 411, 417, 421 (Mo.App.1973); *Oder v. St. Joe Minerals Corp.,* 484 S.W.2d 487, 497–98 (Mo.App.1972); *Greer v. Black, Sivalls & Bryson, Inc.,* 483 S.W.2d 763, 765–66 (Mo.App.1972); *Govreau v. Farmington Transfer Co.,* 473 S.W.2d 750, 755–56[4] (Mo.App.1971); *Herbert v. Sharp Bros. Contracting Co.,* 467 S.W.2d 105, 107 (Mo.App.1971); *Boatwright v. ACF Industries,* 463 S.W.2d 549, 552, 554 (Mo.App.1971); *Gill v. Massman Construction Co.,* 458 S.W.2d 878, 881 (Mo.App.1970); *Greer v. Missouri State Highway Dept.,* 362 S.W.2d 773, 778 (Mo.App.1962); *Patane v. Stix, Baer and Fuller,* 326 S.W.2d 402, 413 (Mo.App.1959); *Driemeyer v. Anheuser–Busch, Inc.,* 153 S.W.2d 821, 825 (Mo.App.1941).

STEPHEN N. LIMBAUGH, Jr., Judge, dissenting.

I respectfully dissent.

The majority does an admirable job in interpreting and explaining the elusive meaning of the terms of section 287.120.1, RSMo 1994, that authorize compensation to employees for personal injuries from accidents "arising out of and in the course of" their employment. For the first time, this Court makes particular note of the 1993 statutory amendment that further defined the words "injury" and "accident." To summarize the majority's analysis, the "arising out of and in the course of" requirement is met when the accident is "clearly work related," which means that the employee's work must be a "substantial factor," not merely a "triggering or precipitating factor" in causing the accident. In addition, it must be shown that the injury resulting from the accident was not caused by a hazard or risk unrelated to the work, a hazard or risk "to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life." Among such hazards or risks are those that are "idiopathic"—peculiar to the individual—although even those are compensable if exacerbated by the requirements of the work. Unfortunately, having accurately stated the law, the majority then proceeds to misapply the law to the facts of this case in such an excessively liberal manner that one is hard-pressed to imagine any injury from an accident at work that is not compensable.

I strongly disagree that any requirement of claimant's job was a substantial factor in the fall that caused her injury. The require-

ment that claimant arise from her chair to dispense medicine to residents at the care facility was, instead, nothing more than a triggering or precipitating factor, which, in and of itself, as the majority concedes, is not a sufficient connection to the accident and the injury. While the job requirement was clearly related to the accident and injury, it was not the kind of substantial factor that should result in compensability. It is not enough to show merely that the claimant suffered an injury while working. *Abel v. Mike Russell's Standard Service,* 924 S.W.2d 502, 504 (Mo. banc 1996).

I also dispute the majority's tacit conclusion that the hazard or risk of injury from a foot falling asleep after sitting in a chair is something to which claimant would not have been equally exposed outside of her employment. As this Court stated in *Abel,* "recovery under section 287.120.1 follows only where a condition unique to or exacerbated by the workplace exists and contributes to cause the injury." *Id.* Here, the majority fails to point to any condition unique to or exacerbated by claimant's work that existed and contributed to cause her injury. The reason for this failure should be obvious: claimant's foot could have fallen asleep wherever she had been seated, whether at work, or at home, or elsewhere.

The majority cannot fairly distinguish the *Abel* decision. In that case, this Court affirmed the decision of the Labor and Industrial Relations Commission denying compensation to the claimant, Abel, who suffered an "intercerebral hematoma" from a fall on the pavement of a gasoline station. The record showed that the fall occurred when claimant fainted while checking credit card receipts at one of the gas pumps as part of his duties as a "gas attendant." Although claimant was fulfilling the requirements of his job at the time of the accident, and the accident and injury was in that sense related to his employment, the Court held that there was no causal connection to claimant's injury. As the Court explained, "although his injuries occurred in the course of his employment, *nothing about this condition of his workplace* enhanced the effects of gravity or made the conditions of his workplace any different from or any more dangerous than those a

member of the general public could expect to confront in a non-working setting." *Id.* The case at hand is no different. No facts in either case showed that the hazard or risk of employment was something different from that which would have been encountered in everyday life. Furthermore, claimant's duty to dispense medicine was no more a substantial factor in causing her injury than Abel's duty to check credit card receipts at the gas pumps was a substantial factor in causing his injury.

The majority decision is more understandable given its misplaced deference to the Commission's purported findings of fact. The Commission acknowledged that "[t]here are really no material facts in dispute." The "facts" are that claimant was sitting in a chair at the care center, and when the time came for her to dispense medication to the residents, she arose from her chair and fell because her foot had fallen asleep. The Commission's "finding"—that the conditions of Mrs. Kasl's required work caused the accident—is simply an application of the law to the uncontested facts. It is a conclusion of law to which this Court owes no deference. *La-Z-Boy Chair Co. v. The Director of Economic Development,* 983 S.W.2d 523, 524–25 (Mo. banc 1999). Moreover, the Commission's so-called "finding" was based exclusively on this Court's now-suspect holding in *Kloppenburg v. Queen Size Shoes, Inc.,* 704 S.W.2d 234 (Mo. banc 1986), a case with nearly identical facts involving an employee who fell when she arose from her chair because her foot had fallen asleep. In my view, the 1993 amendments to the statutory definition of "accident" and "injury," coupled with the *Abel* decision, have effectively overruled *Kloppenburg.*

I would reverse the decision of the Labor and Industrial Relations Commission.